IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RENAISSANCE LEARNING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-0413-CV-W-SWH |
| | ) | |
| METIRI GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

I. INTRODUCTION AND BACKGROUND

Plaintiff Renaissance Learning, Inc. ("RLI"), a Wisconsin corporation, filed RLI's Original Complaint against defendant Metiri Group, LLC ("Metiri") on June 5, 2007. (Doc. #1) According to the Complaint, RLI is a provider of technology for personalized practice and continuous monitoring of reading, math and writing in schools and districts. Specifically, RLI's Accelerated Reader is a computer software program that facilitates reading practice by providing students and teachers feedback from quizzes based upon the books students read. Plaintiff alleges that defendant Metiri is a California limited liability company[1] selling a product called Technology Solutions That Work ("TSW") which is a database of research studies on educational software.

RLI alleges that TSW contains false information about RLI's Accelerated Reader program. Further, RLI alleges that Metiri sold a subscription to its database to the Missouri Department of Secondary and Elementary Education. The Department, in turn, provided Missouri school administrators with instructions for acquiring a password to the website. RLI alleges that school

---

[1]Defendant states that Metiri is actually a Delaware Limited Liability Company with its principle place of business in California and that Metiri is a resident of Delaware and California pursuant to 28 U.S.C.A. § 1332(c)(1).

administrators in Missouri have viewed the TSW database and have been exposed to the false statements concerning RLI's Accelerated Reader program. RLI's two count complaint alleges injurious falsehood/commercial disparagement (Count I) and false advertising and product disparagement under section 43(a) of the Lanham Act (Count II).

Defendant has moved to dismiss the action on the basis that the Court lacks personal jurisdiction, that venue in this district is improper, and that service of process was insufficient. Alternatively, defendant seeks a transfer pursuant to 28 U.S.C. § 1404(a). (Doc. #8). Plaintiff opposes the motion. (Plaintiff's Opposition to Metiri's Motion to Dismiss, doc. #10)

## II. MOTION TO DISMISS

### A. Factual Findings

Viewing the record in the light most favorable to RLI, the nonmoving party, the Court makes the following findings based upon the records submitted to the Court.

1. Plaintiff's complaint alleges in part the following:

    5. RLI is the leading provider of technology for personalized practice and continuous progress monitoring of reading, math, and writing in pre-K-12 schools and districts. Adopted by more than 70,000 North American schools, RLI's tools provide the practice component essential to any core reading, math, and writing curriculum.

    6. RLI's Accelerated Reader is a computer software program that was first introduced in 1986. Accelerated Reader facilitates reading practice by providing students and teachers feedback from quizzes based on the books students read. Accelerated Reader gives students the opportunity to practice reading books at their level, provides feedback on student comprehension of books, and helps students establish goals for their reading. Accelerated Reader is used in more than 60,000 schools, well over half the schools in the United States.

    7. An extensive body of research confirms the effectiveness of Accelerated Reader best classroom practices in helping educators improve student reading skills. The research demonstrates that

2

computerized curriculum management systems such as Accelerated Reader enable teachers to target instruction and accelerate reading growth for students of all ability levels while saving time and paperwork.

* * *

15. Metiri sells a product called the Technology Solutions that Work database ("TSW"). Metiri's TSW product provides a database of research studies on educational software. Metiri states that TSW "provides an indepth, unbiased analysis of each study." Metiri promotes its TSW product on its website www.metiri.com. Metiri, acting through Lemke and Coughlin, is a frequent presenter at state, regional, and national education conferences. Metiri also promotes its TSW product at these conferences through the presentations of Lemke and Coughlin.

16. Metiri has advertised and promoted its TSW product by referring to RLI's Accelerated Reader product, which is often referred to as AR.

17. Metiri's website includes links to a series of videos that serve to promote the TSW product. In its "Intro to TSW" video, Metiri states, "Sorting through the mountains of research on AR, most completed by Renaissance Learning–the company that publishes AR–we located less than 10 that were of a technical quality to be worth reviewing." Metiri further states in its "Intro to TSW" video, "There is, in our professional opinion, no compelling evidence that AR has any significant impact on reading or on student attitudes toward reading and yet, it is currently in place in almost half of all American schools." In its "Looking at Research" video, Metiri states, "To ensure the accuracy of our database, Metiri is constantly on the look-out for new, high-quality research to update the database." While showing the RLI website, Metiri further states in its "Looking at Research" video, "In the wake of NCLB, publishers are scrambling to link themselves to some kind of research bases in order to appear eligible for federal funds."

(Doc. # 1 ¶¶5-7 and 15-17)

    2. Cheryl Lemke, the Chief Executive Officer of Metiri Group LLC, a Delaware Limited Liability Company, provided an affidavit indicating that the Company has its only place of business in Culver City, California and that neither the Company,

3

she or Ed Couglin[2] has ever resided in Missouri. (Doc. 8-5 ¶ 2) Metiri has no employees that reside outside of California.. (Id.) With respect to the activities that give rise to this lawsuit, Ms. Lemke states:

> 5. In reviewing the Complaint, the Plaintiff's claims appear to arise out of access to the website of METIRI GROUP LLC, and not activities performed in the State of Missouri. The website of Metiri Group LLC can be accessed from any computer in the world that is linked to the Internet, but requires a code to access the information. It is not generally available to the public. I don't know how the Plaintiff accessed the website. However, I do know that all of the website content comes from Metiri Group LLC in Culver City, County of Los Angeles, California. All business conducted with Metiri Group LLC is entered into in Culver City, County of Los Angeles, California.
>
> 6. Technology Solutions that Work is a subscription to the website database of Metiri Group LLC. All subscriptions to the Technology Solutions that Work database ("TSW") are entered into in Culver City, County of Los Angeles, California, including the subscription of the Missouri Department of Secondary and Elementary Education. All of the information uploaded onto the TSW website database is uploaded from California. All of the documents, computer hard drives and computer software related to the information uploaded to the TSW website are located in California.

(Doc. # 8-5 ¶¶ 5 and 6)

   3. Documents requested by K. Lee Marshall, an attorney for the plaintiff, from the Missouri Department of Elementary and Secondary Education (DESE) were attached to his affidavit as Exhibits C-J. These documents reflect the following:

      a. The Metiri Group submitted invoice # 090515 to the Missouri DESE dated September 15, 2005 in the amount of $18,130.00 for an annual subscription to TSW. (Doc. # 10-2, Ex. C)

      b. The Missouri DESE on January 18, 2006, sent school administrators a memorandum entitled Fee Resource for Missouri Schools advising how to access the TSW data base. (Doc. # 10-2, Ex. F)

      c. On October 26, 2006, an e-mail was sent from Kdyer@metiri.com to

---

[2]Ms. Lemke's affidavit does not identify Mr. Coughlin's role at Metiri. The Complaint alleges that Mr. Coughlin is the Senior Vice-President of Metiri. (Doc. 1 ¶ 14)

4

    Deborah Sutton, Director of Instructional Technology for the Missouri DESE reminding her that Missouri's subscription to the TSW database would expire on October 341, 2006, and asking them to renew the subscription for $18,130.00. The document reflects that Karen Dyer is the office manager for the Metiri Group with an address in Culver City California. (Doc. # 10-2, Ex. G)

  d. In response, Lisa Walters, Library Media and Technology Consultant for the Missouri DESE replied via e-mail on October 30, 2006, indicating that the subscriptions to TSW databases would be renewed and asking that an invoice be faxed to Jeri Lou Zimmer whom the records show was the Assistant Director of Finance, DESE–Division of School Improvement in Jefferson City, Missouri. (Ex. 10-2, Ex. H)

  e. Invoice # 00100630, dated October 30, 2006, for the amount of $18,130.00 was sent by Cheryl Lemke of the Metiri Group in Culver City, California to the Department of Elementary and Secondary Education. (Doc. # 10-2, Ex. I)

### B. Personal Jurisdiction

Defendant alleges that this Court lacks jurisdiction over the defendant for the reason that the private subscription to and accessing of the database known as TSW does not establish the minimum contacts necessary to require Metiri to appear as a defendant in Missouri courts. (Defendant's Motion to Dismiss, doc. # 8 at 8)

The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that personal jurisdiction exists. Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996); Enterprise Rent-A-Car Co. v. U-Haul International, Inc., 327 F.Supp.2d 1032, 1035 (E.D.Mo. 2004). In order to defeat a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction and may do so by affidavits, exhibits or other evidence. Epps v. Steward Info. Serv. Corp., 327 F.3d 642, 647 (8th Cir. 2003); Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996). For purposes of a prima facie showing, the court must view the evidence in the light most

favorable to the nonmoving party and determine all factual conflicts in its favor. Id.

A prima facie showing of personal jurisdiction is made by showing: (1) that the action arose out of an activity covered by the long-arm statue, and (2) that defendant had sufficient minimum contacts with the forum state to satisfy due process requirements. Just Enterprises, Inc. v. (888) Justice, Inc., 2007 WL 465635 (W.D. Mo. 2007) (citing Conway v. Royalite Plastics, Ltd., 12 S.W.3d 314, 318 (Mo banc 2000)). When considering whether personal jurisdiction exists under the Missouri long-arm statute, it is permissible to consider matters outside the pleadings. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir, 1998).

Under Missouri's long-arm statute, personal jurisdiction may be exercised by a Missouri court if the defendant has transacted any business within the state, made any contract within the state, or committed a tortious act within the state. R.S.Mo. § 506.500.1.[3] The "transaction of any business" prong of the long arm statute has been construed very broadly by Missouri courts. "A corporation may be subject to long arm jurisdiction even though it would not be required to qualify to do business as a foreign corporation. . . . The business may consist of a single transaction, if that is the transaction sued upon." R.S.Mo. § 506.500.1; State ex rel. Metal Service Center of Georgia, Inc.

---

[3] The statute provides in part:
Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;...

6

v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984).

Missouri's long-arm statute confers jurisdiction to the extent allowed by the Due Process Clause. Id.  A forum state can maintain a suit against a non-resident defendant only when the defendant has had sufficient minimum contacts with the state such that the suit does not offend traditional notions of "fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). "Random, fortuitous, or attenuated contacts with the forum state cannot create jurisdiction." Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985). In evaluating minimum contacts, it is proper for a court to focus on the relationship among the defendant, the forum and the litigation. Calder v. Jones, 465 U.S. 783, 788 (1984). Due process questions whether the defendant has "purposely availed" itself of the privilege of conducting activities within the forum state, such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The exercise of personal jurisdiction violates the due process clause unless the actions of the "defendant himself ... create a 'substantial connection' with the forum State." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 (8th Cir.1991) (quoting Burger King, 471 U.S. at 475)).

The Eighth Circuit has set forth five factors to determine whether there are sufficient minimum contacts to confer jurisdiction. To determine personal jurisdiction, the Court should consider the nature and quality of the contacts, the quantity of the contacts, the relationship of the cause of action to the contacts, the interest of Missouri in providing a forum for its residents, and the convenience or inconvenience to the parties. Dakota Indus., Inc., 946 F.2d at 1390. The first three factors are primary factors, and the remaining two are secondary factors. Id. The Court looks to all of the contacts in the aggregate and examines the totality of the circumstances in making its

7

determination. Northrup King. Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir.1995). The third factor, the relation of the cause of action to the contacts, distinguishes whether the jurisdiction is specific or general. See Digi-Tel Holdings, Inc., 89 F.3d at 522 n. 4. "Specific jurisdiction refers to jurisdiction over causes of action arising from or relating to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir. 1994).

In Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa. 1997)[4], the court discussed personal jurisdiction as it relates to the exchange of information on the Internet. The court found that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 1124. In analyzing previous decisions, the court identified a sliding scale to be used in determining the permissible scope of personal jurisdiction based on Internet use.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. E.g. Compuserve, Inc. v. Patterson, 898 F.3d 1257 (6th Cir. 1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. E.g. Bensusan Restaurant Corp. v. King, 937 F.Supp 295 (S.D.N.Y. 1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host

---

[4] In Lakin v. Prudential Securities, Inc., 348 F.3d 704, 710 (8th Cir. 2003), the Eighth Circuit adopted the Zippo sliding scale as "an appropriate approach in cases of specific jurisdiction. . ."

> computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. E.g. Maritz, Inc. v. Cybergold, Inc., 947 F.Supp. 1328 (E.D.Mo. 1996).

Zippo, 952 F.Supp. at 1124.

Defendant likens itself to a passive web site which merely makes information available to those who are interested in it. Defendant operates a private Web site that includes information about educational technology products. Relying on ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707 (4th Cir. 2002), defendant contends that the fact that it operates a Web site which was subscribed to and apparently accessed in Missouri does not constitute a quality contact with Missouri sufficient to hale defendant into court in Missouri. (Doc. #8 at 9)

In response, plaintiff argues that defendant "deliberately and systematically availed itself of the benefit of doing business in Missouri." (Plaintiff's Opposition, doc. # 10 at 9) In support of this argument, plaintiff provided exhibits C through J which evidence substantial contact between representatives of defendant and the Missouri Department of Elementary and Secondary Education. In 2005, the Missouri DESE paid defendant $18,130.00 for one year's subscription to defendant's Web site. A year later, defendant actively solicited another's years subscription from the Missouri DESE and received payment from the DESE for $18,130.00 another year of access to the web site. Through the department's subscription, all school administrators throughout the state of Missouri had access to the information on defendant's Web site and the TSW database. Based upon the evidence before the Court, defendant has engaged in business in Missouri as evidenced by the e-mail and faxed communications between representatives of the Missouri DESE and representatives of the defendant. This cause of action is directly related to those contacts as the claims of commercial

9

disparagement and false advertising are based on the information that Missouri educators allegedly accessed on the website pursuant to the contact between Metiri Group and the Missouri DESE.

## III. VENUE

Defendant argues that this case should be dismissed because it was filed in the Western District of Missouri where it can satisfy none of the requirements of the venue statute, 28 U.S.C. § 1391. The complaint alleges jurisdiction based on diversity of citizenship and because a violation of a federal statute is involved. (Complaint ¶ 3) Thus, plaintiff contends that venue is proper under 28 U.S.C. § 1391(b) and (c).

28 U.S.C.§ 1391(b) applies to civil actions, such as this one, "wherein jurisdiction is not founded solely on diversity citizenship..."[5]  Such actions may be brought in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  28 U.S.C. § 1391 (c) further provides:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . .

---

[5] To the extent defendant relies on 28 U.S.C. § 1391(a) to argue that venue is improper, defendant's reliance is misplaced.  Section 1391(a) by its very terms applies in the circumstance "wherein jurisdiction is founded only on diversity of citizenship..."

10

28 U.S.C. § 1391 (c).

Applying 28 U.S.C. § 1391 (b) and (c)[6] to this case, venue is proper. This Court has determined that defendant is subject to personal jurisdiction. Since defendant is a corporation, it is deemed to reside in this judicial district for venue purposes. See, Enterprise Rent-A-Car Company v. U-Haul, Inc., 327 F.Supp.2d 1032, 1045 (E.D.Mo. 2004) (questions of venue and personal jurisdiction are indistinguishable). Therefore, venue is appropriate in this district.

### IV. TRANSFER OF VENUE

Defendant moves in the alternative to transfer venue of this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). Plaintiff opposes the motion.

Federal courts generally give "considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir.) cert denied, 522 U.S. 1029 (1997). "Where the balance of relevant facts is equal or only sightly in favor of the movant, the motion to transfer should be denied." Houk v. Kimberly-Clark Corp., 613 F.Supp. 923, 927 (W.D.Mo. 1985).

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

---

[6] Defendant contends that it is a resident of the state where it is incorporated and where its principal place of business is, applying 28 U.S.C. § 1332(c)(1). Section 1332(c)(1) applies solely to determining the existence of diversity of citizenship under 28 U.S.C. § 1332 and removability under 28 U.S.C. § 1441. It does not apply in determining proper venue under 28 U.S.C. § 1391.

11

28 U.S.C. § 1404(a). In determining whether or not to transfer venue at the request of a party, the Court will consider (1) the convenience of the parties, (2) the convenience of the witnesses and (3) whether the transfer would be in the interest of justice. Terra, 119 F.3d at 691.

Defendant argues that it and its employees reside in California and they are in possession of the information relating to the content and maintenance of the website. These employees would also possess the knowledge regarding subscriptions to the service and payment. Defendant contends it would be burdensome for these individuals to travel to Missouri for the trial of this matter. Plaintiff's principal office is located in Wisconsin. However, plaintiff contends that significant third party witnesses such as individuals at the Missouri Department of Elementary and Secondary Education responsible for the contract with defendant and school administrators in Missouri who viewed the information on defendant's website and perhaps made purchasing decisions because of it, are located in Missouri. Plaintiff argues that these third party witnesses would not be within the subpoena power of the California court. These facts seem to indicate that transfer of the case to California is inappropriate.

Defendant also argues that California has a strong interest in protecting the interests of the persons and businesses that reside and conduct business within the state. Plaintiff argues that defendant's false information on its website is harmful not only to plaintiff, but also to Missouri administrators, teachers and students. In the interest of justice, plaintiff claims that its choice of forum should not be disturbed.

Based upon the information before it, this Court finds that plaintiff's choice of forum is entitled to deference. Thus, defendant's motion to transfer is denied.

## V. INSUFFICIENCY OF PROCESS

12

In its motion, defendant requests the case be dismissed pursuant to Rules 12(b)(4) and 12(b)(5) for insufficiency of service of process. Following the filing of the motion, plaintiff served a second summons on defendant, rectifying any alleged problems with the original service. Therefore, this motion is denied as moot.

## VI. CONCLUSION

Based upon the foregoing it is

ORDERED that defendant's Motion To Dismiss For Lack Of Personal Jurisdiction Pursuant to Rule 12(b)(2); Motion To Dismiss For Improper Venue Pursuant To Rule 12(b)(3);and Motion In The Alternative, To Transfer Pursuant to 28 U.S.C. § 1404(a) (doc. #8) is denied. Defendant's Motion To Dismiss And To Quash For Insufficiency Of Process And Insufficiency Of Service Of Process Pursuant To Rules 12(b)(4) and 12(b)(5) (doc. #8) is denied as moot.

                                                                     /s/ Sarah W. Hays
                                                                    SARAH W. HAYS
                                            United States Magistrate Judge