UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
KANSAS CITY

RENAISSANCE LEARNING, INC.           )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )   Case No. 4:07-cv-00413-SWH
                                     )
METIRI GROUP, LLC                    )
                                     )
            Defendant.               )

## METIRI GROUP, LLC'S SECOND MOTION IN LIMINE AND SUGGESTIONS IN SUPPORT

COMES NOW defendant Metiri Group, LLC and moves the Court for an order *in limine* restricting plaintiff from offering, directly or indirectly, to the trier of facts, through witnesses, argument, comment or otherwise, evidence or matters related to the testimony of G. William Kennedy, pursuant to Federal Rules of Evidence §§ 403 and 702, and <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579 (1993). Dr. Kennedy's report, attached hereto as Exhibit 1, and any attendant testimony must be excluded for the following reasons:

1. Dr. Kennedy simply took sales data provided by RLI and applied simple arithmetic to calculate the differences between Metiri subscribers sales and non-Metiri subscribers sales for the years 2003–2008, which he considers RLI's damages.

2. Dr. Kennedy did not investigate, validate, challenge, or even inquire as to the basis or accuracy of the sales data RLI supplied to him.

3. Dr. Kennedy did not follow a rigorous scientific approach in his analysis, but rather followed RLI's attorneys' instructions to measure damages based on the data he was provided.

4. Dr. Kennedy did not investigate any facet of the market in which RLI and its competitors operate to gain perspective on what changes were taking place in that market. In fact, Dr. Kennedy did not perform any independent research regarding RLI, RLI's products or Metiri.

5. Dr. Kennedy's assumption that all schools with access to TSW utilized the database were impacted by it is false and contrary to the evidence on the record.

6. Dr. Kennedy's damage calculations are disconnected from this case's facts and leaves the jury with no reasonable method to dissect the report and assess what acts may have caused particular losses.

7. Dr. Kennedy does not account for when the customers subscribed to TSW, which in many instances leads Dr. Kennedy to attribute a reduction in customers' purchases to Metiri before those customers became TSW subscribers.

In short, Dr. Kennedy's opinions are based on speculation, inadequate methods, and unscientific analysis and must be excluded from evidence.

### **Arguments and Authorities**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 702 requires the trial judge to act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. See Daubert, 509 U.S. 579, 589 (1993). Under Rule 702, the proposed expert testimony must meet three prerequisites: it must be based on specialized knowledge that is useful to the finder of fact; the witness must be qualified; and the evidence must be reliable in an

2

evidentiary sense. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). The basis for the third prerequisite codifies Daubert and its progeny. Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). It requires that trial courts must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology were reliably applied to the facts of the case. Daubert, 509 U.S. at 592-93. Eighth Circuit courts have not hesitated to exclude economic experts where their testimony is not supported by sufficient evidence or engaged in mere speculation. See e.g., Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056 (8th Cir. 2000). RLI bears the burden of establishing, by a preponderance of the evidence, that Dr. Kennedy's testimony is admissible under Rule 702. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757-58 (8th Cir. 2006). Among the numerous nonexclusive factors the Court can examine in its gatekeeping role are: whether the expert's theory has been or can be tested, whether the theory has been generally accepted; the potential rate of error; whether the expert ruled out alternative explanations; and whether the expert sufficiently connected the proposed testimony with the facts of the case. Lauzon, 270 F.3d at 687. The application of Rule 702, Daubert, and its progeny clearly establish that Dr. Kennedy's testimony must be excluded.

   A. *Dr. Kennedy's opinions are not sufficiently connected to the evidence and facts of the case and must be excluded.*

Dr. Kennedy fails to sufficiently connect his proposed testimony with the facts of the case and completely disregards uncontroverted evidence on the record. Dr. Kennedy incorrectly assumed that all mutual RLI and Metiri customers accessed the TSW database, which is simply not accurate. Dr. Kennedy made no attempt to determine which RLI customers actually visited the Metiri website although this information was available to RLI. Kennedy Dep. at 45, 53 attached hereto as Exhibit

3

2. Another one of RLI's designated experts, John Mallery, actually performed an analysis of the web log activity of TSW and developed a list of visitors, including dates and times, but Dr. Kennedy did not review this information. Id.; excerpt of Mallery Report attached hereto as Exhibit 3.

This defect in Dr. Kennedy's testimony and its misleading impact is clear. For example, a TSW subscription was purchased by the State of Washington's Office of the Superintendent of Public Instruction for use in the State of Washington ("OSPI"). See TSW Subscriber List ("Puget Sound ESD (Washington State))" attached hereto as Exhibit 4. Dr. Kennedy assumed that all of the schools and school districts in the State of Washington accessed TSW and RLI was damaged thereby, which is not supported by the evidence. Dennis Small, the educational technology director for OSPI testified that only approximately *twenty-five percent* of the school districts in the State of Washington made active use of the TSW database in 2005, 2006 and 2007, and only fifteen to twenty percent utilized TSW in 2008. Small Dep. at 86, attached hereto as Exhibit 5. Under Dr. Kennedy's analysis, one hundred percent of schools and school districts in the State of Washington accessed TSW in 2003, 2004, 2005, 2006, 2007 and 2008. Additionally, J.B. Fitzpatrick, the former director of information services for the Bethel School District in the State of Washington, testified that he did not rely on the TSW database to determine what research was available on Accelerated Reader nor did he rely on TSW for his assessment or evaluation of programs the district was considering implementing. Fitzpatrick Dep. at 22, 25, attached hereto as Exhibit 6. Yet, Bethel School District is included in Dr. Kennedy's damage calculation.

Moreover, Dr. Kennedy failed to consider when TSW customers purchased their subscriptions in performing his damage analysis. Dr. Kennedy assumes that all TSW subscriptions were active throughout 2003, 2004, 2005, 2006, 2007 and 2008, and that RLI sustained damage

4

throughout this period for every purported mutual customer. Dr. Kennedy's testimony in this regard is misleading and not tied to the facts of the case. For example, the Georgia Department of Education first subscribed to TSW on February 1, 2006, but Dr. Kennedy attributes damages of $327,070 to purchasing activity between 2002 and 2005. Pflaum Report at 5, attached hereto as Exhibit 7; Exhibit 3. Likewise, Dr. Kennedy fails to consider when TSW subscriptions terminated, and instead allocates damages to Metiri for the entire 2003–2008 period. Additionally, Dr. Kennedy was told by RLI's corporate controller, Allen Thurber, that school and school district purchasing decisions are made are in the late spring/early summer yet he failed to incorporate this information into his analysis. Kennedy Dep. at 18. The disconnect between Dr. Kennedy's testimony and reality renders his opinions too misleading to go to a jury because "too great an analytical gap [exists] between the data and the opinion proffered." General Elec. Co., 522 U.S. at 146. Dr. Kennedy's testimony and report must be excluded under Daubert's standard for "fit" because his damage model is too disconnected from the facts of the case and attributes losses that cannot be reasonably inferred from the record. See Daubert, 509 U.S. at 591.

B.  *Dr. Kennedy did not consider any alternate explanation for the alleged damage.*

As noted in Lauzon, in determining whether to exclude expert testimony the Court may consider whether an expert ruled out alternative explanations. 270 F.3d at 687. Dr. Kennedy did not rule out, *or even consider*, any alternate explanations for RLI's alleged losses. Dr. Kennedy assumes that the "only differences between the two sets of customers [mutual Metiri customers and non-mutual Metiri customers] was the exposure to the Metiri information." Kennedy Dep. at 43. RLI's own employees, however, admit that many things, including funds available, influence a

school or school district's ability to purchase education software. See Truby Dep. 82–86 attached hereto as Exhibit 8.

Moreover, a lump sum indiscriminately attributed to Metiri is not sufficiently tied to the facts when the evidence suggests that various factors may have caused any lost sales. Implicitly, the jury has no reasonable method to dissect the report and assess what acts may have caused particular losses. Dr. Kennedy's failure to even acknowledge, let alone rule out, any alternative explanations such as competing products, marketing, changes in student need, or funding available conflicts with the realities of the market in which RLI is engaged and undermines his analysis and misinforms to such an extent that it must be excluded. See Concord Boat Corp., 207 F.3d at 1056 (8th Cir. 2000)(expert opinion should not have been admitted because it did not incorporate all aspects of the economic reality market).

C.   *Dr. Kennedy failed to undertake a rigorous, scientific approach.*

To be admissible, plaintiff must provide "sufficient proof that the expert's testimony is the product of reliable principles and methods, which were reliably applied to the facts of the case." Curblow v. Nylon Net Co., Inc., 2008 WL 4186919 at *2 (W.D. Mo. 2008). Dr. Kennedy wholly failed to undertake a rigorous, scientific approach to develop his opinions. As noted in Dr. Pflaum's report, Dr. Kennedy failed to utilize the numerous statistical and financial methods available to him. Rather, he unsuccessfully and incorrectly attempts to assert *pro hoc ergo propter hoc* (after this, therefore because of this) that Metiri must be the cause of any sales declines. Pflaum Report at 7. However, "*post hoc ergo propter hoc* is never a conclusively cogent argument" Schempp v. Reniker, 809 F.2d 541, 542 (8th Cir. 1987), and is "a logical fallacy." Spencer v. U.S., 569 F. Supp. 325

6

(W.D. Mo. 1983). Dr. Kennedy's failure to employ a rigorous and scientific approach bears directly on the admissibility of this "expert" testimony.

Dr. Kennedy's theory and approach is not generally accepted in his field. In the social sciences, a widely-accepted form of inquiry is to: identify the problem to be solved; formulate the hypothesis explaining what is observed; identify the quantitative method and experimental structure to test the hypothesis; and conduct the appropriate tests, typically statistical. Plfaum Report at 8. Dr. Kennedy did not formulate the question to be answered or identify the data needed to address this question. Id. Dr. Kennedy testified that RLI's counsel selected and provided the data and asked him to measure damages using that data. Kennedy Dep. at 25-6. Dr. Kennedy relied on plaintiff's damage theory without independently verifying the information he was given. Dr. Kennedy did nothing to verify the accuracy of this data. This defect alone renders Dr. Kennedy's analysis unreliable. See MTX Communications Corp. v. LDDS/WorldCom, Inc., 132 F.Supp.2d 289, 292-293 (S.D.N.Y. 2001)(excluding economic expert who conducted no independent verification of information for comparison purposes supplied by non-expert). Furthermore, in his report, Dr. Kennedy fails to acknowledge that he did not confirm the reliability of the data, providing said data with an unwarranted impression of reliability.

Additionally, Dr. Kennedy did not conduct any independent research, market survey, or study even though he has no experience with the education technology market. Kennedy Dep. at 40-41; 4-5. Dr. Kennedy did not perform any independent research regarding Metiri, Metiri's services, RLI or RLI's products. Id. at 30. Dr. Kennedy's report clearly reflects that he did nothing more than perform simple arithmetic calculations comparing the two sets of customers. These calculations are not scientific or technical as Rule 702 requires. Dr. Kennedy's opinions are so fundamentally

7

unsupported that they will offer no assistance to the jury and must be excluded. See Wood v. Minnesota Manufacturing and Mining Co., 112 F.3d 306, 309 (8th Cir. 1997).

> D. *RLI failed to produce any evidence that any customer that failed to purchase an RLI product due to the actions of Metiri.*

Even if Dr. Kennedy's analysis and testimony was not inadmissible, unscientific and fatally flawed for the reasons set forth herein and contained in Dr. Pflaum's report, any expert testimony in this regard is completely unfounded and baseless as RLI has failed to produce any evidence or testimony from a school or school district indicating that it declined to purchase Accelerated Reader because of the Metiri's actions.

"The Missouri Supreme Court has held that lost profits are generally too remote and speculative to be recoverable. Metropolitan Express Serv., Inc. v. City of Kansas City, Mo., 71 F.3d 273, 274 (8th Cir. 1995)(citing Coonis v. Rodgers, 429 S.W.2d 709, 714 (Mo. 1969). "[T]o recover lost profits a plaintiff must establish *with reasonable certainty* that both defendant's actions caused plaintiff to lose profits and the amount of those damages. Id. (emphasis added). Plaintiff has provided no evidence, other than Dr. Kennedy's "expert" report, that *any* RLI customer declined to purchase Accelerated Reader because of the actions of Metiri, exposing Dr. Kennedy's opinions as pure speculation. Dr. Kennedy's testimony is without merit and too speculative to be presented to the jury as "expert testimony." Referring to his flawed, unscientific testimony that is not tied to the facts of the case as "expert testimony" will unfairly persuade the jury that his speculative testimony has much more certainty and precision that reality shows and must be excluded under Daubert and Federal Rule of Evidence 702.

8

## Conclusion

Dr. Kennedy relies on unjustified, unreliable, and invalid assumptions, data and scientific theory, while failing to consider significant alternative theories ignoring uncontroverted evidence on the record. Dr. Kennedy's report and any subsequent testimony must be excluded, as it fails to satisfy the requirements of Daubert and Rule 702, would not assist the trier of fact in that it would only confuse and misinform the jury, and cause undue prejudice to defendant.

WHEREFORE, defendant prays for an order of the Court *in limine* excluding the testimony of G. William Kennedy for such other and further relief as the Court deems just and appropriate.

/s/ Theresa A. Otto
Lee M. Baty, Esq. (#29547)
Theresa A. Otto, Esq. (#43453)
Matthew J. Westering, Esq. (#61134)
BATY, HOLM & NUMRICH, P.C.
4600 Madison Avenue, Suite 210
Kansas City, MO 64112-3012
lbaty@batyholm.com
totto@batyholm.com
mjwestering@batyholm.com
Telephone:    816-531-7200
Telecopy:      816-531-7201
ATTORNEYS FOR DEFENDANT

***Certificate of Electronic Filing***

I hereby certify that on October 12, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

James M. Weiss, Esq.
K. Lee Marshall, Esq.
BRYAN CAVE
211 N. Broadway, Ste. 3600
St. Louis, MO 63102-2750
james.weiss@bryancave.com
klmarshall@bryancave.com
Telephone:   314-259-2000
Telecopy:    314-552-8773

Robert J. Hoffman, Esq.
Rick E. Frawley, Esq.
Mark W. Brennan, Esq.
BRYAN CAVE, LLP
1200 Main Street, Suite 3500
Kansas City, MO 64105
rick.frawley@bryancave.com
rjhoffman@bryancave.com
Telephone:   816-374-3200
Telecopy:    816-374-3300

ATTORNEYS FOR PLAINTIFF


*/s/ Theresa A. Otto*
Attorneys for Defendant

10